The next case for argument is Nestle Dreyer's Ice Cream Co. v. NLRB, Mr. Bobber. Thank you, Your Honor. May it please the Court, I'm Bernard Bobber. I'm the employer's lawyer at Nestle Dreyer's Ice Cream Co. There are two important points fundamental to Dreyer's appeal in this case. First, the Labor Board's ruling in this case directly conflicts with the law of this circuit, as articulated 20 years ago in the Lundy Packing case. Second, the standard that the Labor Board used to rule in our unit determination case violates the Act, specifically Section 9C-5, by giving controlling weight to the extent that the union has organized a unit. In the Lundy Packing case, this Court addressed a unit determination issue that involved a pork processing facility, some 880 employees. And the union there sought a petition for a unit larger than ours at issue in this case. It was 600 production and maintenance employees. Can I ask you a question, Bernard? Yes, Judge. Because Lundy seems a little bit different to me, so I just want to give you my concern, and then you can address it in your discussion of the case. So in Lundy, right, the union wanted to put together – there were three departments that had people on the floor. There was the maintenance, production, and quality assurance, or something like that. And they wanted to combine two separate units, but not all three. So that looked a little bit fishy, right, like why two and not three? A little arbitrary, maybe, whereas in this case, all the union wants to do is precisely track the department lines that have already been drawn by the employer, right? They're being totally respectful of the existing boundaries that were drawn by the employer. They're just saying, you've drawn a line around this unit, and that's the unit we want to organize. So it seems very different to me. There's nothing kind of problematic about this one on its face, the way there was in Lundy, or the Court said, this just looks problematic to us. Your Honor, I think it is, though, because where this Court came down in Lundy in finding that the act was violated was to look at the board standard applied to the employer's argument that additional employees shared enough of an interest with the petition for employees. And this Court, first of all, it started with the obvious observation. A union will petition for the group of employees that it organized. The extent of its organization, it will go that far. That's what has to then be analyzed by the board, we know under Section 9, in each case, so that it can determine what's the appropriate unit. Is it the employer unit, the craft unit? We understand that, but you have to answer her question. She says that this doesn't look like the fact situation that Lundy was looking at. I think it is, Your Honors. Lundy turned on the board's standard applied to the employer's objection. Lundy did not... In a case where the Court already said, this looks problematic to us. We're not seeing why two and not three, and the kind of circles that the union is drawing here doesn't really, the reasons they're giving don't hold up. There are people who sort of cross the lines. But there's nothing kind of, on the face of it, there's just nothing problematic. Is there about a union coming in and saying, I see the employer has put its employees into three categories. We'd like to unionize one of them. We're just tracking the employer's own lines. Under the Act, that can't be the answer, and still respect the rights of all of the employees. Why couldn't it be if you did a factual analysis and you looked at all the facts, if the NLRB looked at all the factors in any of these cases, forget the overwhelming community of interest test, they just looked at all the factors and considered all the factors, and this would be one of the factors they would consider, that this is something that sort of matches what the company did. You might not agree with that, but why couldn't they just reach the result that way and that would take into account, at least factually, any concerns? I think that's right, Your Honor. That would answer your question. Yes, Your Honor. If one of the considerations is the way that the employer has organized its workforce, that can be a valid part of the analysis. But here, what's happening under specialty health care is that so long as the union doesn't trip up in identifying its unit and it somehow identifies a group. It's so long as there isn't a gerrymander, right? That's what we're worried about here, that the union is going to come in and say, we want to organize the employees who sit on the right side of the building because that's a gerrymander. It makes no sense. It doesn't track the existing unit lines drawn by the employer. It doesn't respect natural communities of interest. It's just a fake unit, and the only way to understand it is based on the union's strategic interests. But that's miles away from the case here. They walk into the company. They say, oh, look, the employer has given me three categories of employees. I'd like to unionize one of them. What could possibly be wrong with that? It's much more than that, Your Honor, because specialty health care allows a union to get past the so-called first step of its analysis so long as the proposed unit is identifiable, and that includes by job classification. In our dryers plant at issue in this case, the regional director pointed out, there's ten different job classifications. I represent many manufacturers who have a factory with 25, 30, 35 job classifications. And so long as the union proposes a unit that tracks a job classification, it will satisfy the first part of the test, and the only way that the employer can successfully argue that anybody else shares enough of an interest with the people in that job classification is to prove overwhelming community interest. And, Your Honors, the proof is in the pudding. The board's application of this standard confirms that what drives the unit determination since specialty health care is, in fact, the unit proposed by the union, the extent of organization. Do you think your stronger argument before us today is a violation of the statute or the Lundy case? Your Honor, they both come together. I'll ask you what you think is stronger. Lundy, Your Honor. You do because you think in Lundy this court has talked about what we think of the statute. Exactly. The court has already interpreted and applied 9C5. The other side draws a distinction, which they apparently sold to the D.C. Circuit, on the presumption. What do you make of that presumption that, you know, their argument on Lundy, they say what the problem with Lundy was that they see the 4th Circuit saying we are upset with the NLRB and not Lundy because the NLRB had a presumption. They presumed the union was correct. What about that? I do not see that as a basis for this court's ruling in Lundy. The court did step past that and mentions when a unit is presumed to be appropriate, it's now a violation of 9C5. In their case, that wasn't the issue. The first step in an analysis of whether what the union brought forth as a petition for a unit and whether those people shared enough interests with each other, that was not the determining factor at all in the holding of Lundy. In the record of Lundy, wasn't there just an analysis done? I'm talking about the NLRB. Didn't they just do their analysis, normal analysis? Do you know the facts of Lundy? Generally, I do. Yes, Your Honor. They did an analysis of the— Here's the thing. When the court says presumed, that's either the court saying that in the process, the NLRB actually created a presumption, their analysis was a presumption, or the court—we are using the word presumed to say what the NLRB's analysis and test leads to. You see what I mean? Yes, Your Honor. And I think it looks to me it's more clear, I think it's fairly clear, that the court was talking about we're not saying you presumed in your analysis. We're just saying your analysis leads to what is basically a presumption. I think that's exactly right because the court, in explaining its holding in Lundy, did not get hung up on that first step. It focused on what has become specialty health care's second step, the only way that we can successfully argue that you've improperly excluded from the vote. Some people that share— And the court said in Lundy, this court said, your transposition of the overwhelming community of interest taken from a separate kind of case, an accretion case, violates the act. Correct, Your Honor. And we concede that the use of that standard in accretion cases can make sense. There you are forcing people into an organized unit. But I'm not asking you that. I'm talking about what Lundy says. Lundy, to me, fairly straightforwardly says, I want to see where does that presumption come from? I said, surely there must have been somewhere in the record where the NLRB says, look at these facts we presume. They don't do anything like that that I can see. I'm going to ask the other side, too, about this. And then the court goes, what you've done, the way you have looked at the factors and the way you've analyzed it, that effectively creates a presumption that may only be overcome by that overwhelming community of interest test. And then they specifically say, your transposition of that test into this context violates the act. I agree, Your Honor. What would Lundy require in this context? What did the board or the union have to do with the board to satisfy Lundy? Your Honor, the historical test is the test that has satisfied for years the act. The historical test requires an assessment of the community of interest factors, those terms and conditions of employment that become central to collective bargaining. And to determine those across. . . How do we gauge that against the notion that, of course, that the union and the board don't need to select the most appropriate bargaining unit, just an appropriate bargaining unit? So where do you draw the line? The line is drawn in how you determine what's an appropriate bargaining unit. You're absolutely correct. That's a bit of a circular answer. Well, for years, courts have been satisfied that the board satisfies its obligation under Section 9 to analyze in each case the proper unit to come to an appropriate unit so long as it's assessing the community of interest factors over both the petition for unit and in relation to and in comparison to those other employees that share community of interest. So you just do that factual analysis on those factors? Yes, Your Honor. And that is why specialty health care can't stand because the specialty health care standard drives the community of interest analysis exclusively in. Let me ask you this question, though, to follow up a little bit on. It looks to me like what you would say is a longstanding view is that the NLRB is to do what they did in cases up through and through Lundy without applying that test. You just look at the factors. You look at those enumerated factors. You know what I'm talking about. Yes. And then my question is, why can't the NLRB use the traditional test and come to the same result? It may, and then it's statutorily permissible if it has done that analysis with due and fair consideration across the workforce. Here... I thought it did. I mean, I looked at the regional director's opinion, and it does go through, and it compares and contrasts the production and the maintenance workers. They don't just say the maintenance workers all make roughly the same amount of money. They say, and that's different from what the production workers make. They work roughly the same hours. That's different from what happens on production. They did exactly the analysis you're talking about, which I guess is why Board Member Hayes, if I'm remembering right, says this is fine with me, not under that overwhelming community of interest thing, but under our traditional standards. So I guess I just keep coming back to what this case seems like a really easy case. I do understand that there might be cases that would look difficult and where application would really matter which test you were applying, and application of this overwhelming community of interest thing might raise problems, as it did in Lundy. But there's just nothing. This case just seems like the easiest case in the world to me. Your Honor, I take issue with that. I don't think it is. We cited... Let me say this. I don't know that you can take issue with the fact that it's the easiest case for her. True, but it's not the easiest case in the world. We cited cases in the Board's jurisprudence, several, numerous, in which a maintenance-only unit in a factory was determined to be inappropriate. It was too narrow because the maintenance employees worked closely enough with... That's contrary to the findings made by the regional director here. So are you saying those findings weren't supported by substantial evidence? Is that your argument? No. The regional director went through and said these are totally distinct communities. They compared the wages. They compared the hours. They compared the supervisory structure, and they said not only are the production workers or whichever it was, the maintenance workers, do they share a community of interest, but it is distinct from this other group. That looks a lot like the historical analysis that used to be done. I agree with that. I disagree that the result of the analysis is that there's not a sufficient community of interest when you compare it to other production and maintenance cases. The one thing I'd like to say before I conclude my initial 15 minutes, in fairness to the Board, is I suggested that the proof that 9C-5 is violated here is found in the Board's application. Since specialty health care, we found 38 Board cases in which the Board had to analyze an employer's argument that the proposed unit was too narrow and improperly excluded coworkers who shared a community of interest. Of the 38, the employer lost 37. The one that the employer won was Adwala, a 2011 case a few months after specialty health care. I think that's really an outlier because you'd see in Adwala, the Board determined that it really was a fractured unit that was proposed that didn't track any job class, functional, or department lines. But the Board did go on to say, therefore, the merchandisers were excluded. As your quarrel with Judge Harris' analysis is that that examination of the community of interest occurred after the burden had shifted to the employer to show an overwhelming community of interest? Is that the problem? That's largely the problem, Your Honor. We're only going to—the current test under the Board's— Judge Harris seems to be signaling that that's not the case. But I'm saying, no, that's not how it happened, right? The regional director goes through and makes those findings preliminarily, that they share a community of interest, that it's a distinct community of interest, and then they say, nevertheless, employers saying you have to go to this bigger one and you don't have to because there's no overwhelming community of interest. I think it's somewhat muddled. Your Honor is correct that it has some look and feel of the historical test where the groups at issue should be discussed together and compared together. Thank you. You reserved some time, as you said. Mr. Lauro, glad to hear from you. Good morning, Your Honors. May it please the Court, I am Greg Lauro for the National Labor Relations Board. Seeking enforcement of the Board's order because its unit determination at issue here is supported by substantial evidence and a reasonably defensible— Why doesn't it run afoul of Lundy? You seem to suggest that this Court was worried about a presumption in the Lundy case. Is that correct? That is correct. Where is that presumption in the Lundy case? Do you think the NLRB and the facts of Lundy, they applied a presumption? Well, I think— We have to answer that. Where is the presumption? Do you think the NLRB, did they use a presumption in Lundy? The Board didn't use the word presumption, but the Board didn't do the independent multifactor analysis on the initial— So when the Court says, did the Court, when the Court said presumed, you seem to hang your argument on that. Do you think the Fourth Circuit thought that the NLRB had applied a presumption in their analysis? I do, Your Honor, because— Where does that come from? In the Court's decision, and I'm looking— Right. You know, the Court is saying, by presuming the union proposed unit is proper— I know. Where does that presume come from? To me, presumed is either the Fourth Circuit thought there had been a presumption in the analysis that was incorrect. In other words, the NLRB said, based on these facts, we presume X, Y, and Z. Or else that presume means the Fourth Circuit, in looking at the analysis you did in Lundy, effectively leads to the presumption. Which do you think it is? Well, I'm trying to make sure I understand your question. I think what's clear here— I'll say it again if you don't. Yeah, I'm sure you'll jump in if I don't understand it. What is clear is the Fourth Circuit said, here's the error. Instead of applying the multifactor traditional community of interest test to decide that the unit was appropriate in the first instance, you skipped that and effectively presumed it was appropriate. But where does that come from? Is that in the NLRB proceedings in Lundy? I pulled that and looked at it. They just do an analysis. They just do an analysis. This is like every other analysis. They just do an analysis under overwhelming community of interest. Right. And so the Court's concern—I'm just going with what the Court said. They said, we have a problem here because in a novel departure from precedent where the Board applied community of interest principles as the first part of the test, the Board here presumed the unit was appropriate. And it was in that context that the Court objected to the overwhelming community of interest test. But you hang a lot of your argument on presuming as did the D.C. Court. What they say about us doesn't really matter, but I'm interested in that and what they said. I don't understand your argument about what are you—where did—when the Fourth Circuit says this, I want your reading of the case because we can read it ourselves. Right. You said—I'm going to read it to you. You know where it is. The Board, however, adopted a novel legal standard which effectively accomplished the exclusion. Under the new standard, any union-proposed unit is presumed. Right. Now, do you think that presumed is the Fourth Circuit saying the NLRB presumed it? Or do you think the Fourth Circuit is saying under the new test the NLRB applied in this case, it creates the presumed standard? I think it's the Court saying, Your Honor— The second? No, the first, if I'm getting the order right. The Court is saying the Board presumed that the unit was appropriate as an initial matter without putting any burden on the petitioner to bring facts showing it's at least an appropriate unit. No analysis of the multi-factor community of interest test. Let's stop for a second there. Yes. What those factors looked at in the Lundy case? Only under a community of interest analysis. How? And, of course, as we discussed this morning, or as Your Honors discussed, there are some differences factually with Lundy, too. I'm talking about this case, though. Of course. Because it strikes me, then, after all that I read to you, this Court ends that section of analysis by saying the Board's transposition of the, quote, overwhelming interest, quote, standard runs afoul of 9c-5. The Court didn't say that you did anything wrong by using a presumption. The Court says that's the effect of your analysis under this test, which test violates the statute. Your Honor, I— You don't read it that way? No, I don't, Your Honor. And I appreciate it will be up to Your Honors to assess your own precedent in Lundy. But the Board's view, and I do think it's supported by the text of the decision, is that the gravamen of the concern was the presumption and everything wrong with the overwhelming community of interest test. But why is the gravamen the presumption, which, quite frankly—I just want to say this again so you do understand it. Because you hang—to me, I asked the other side, what do they think their strongest case was? They said, what I think is correct is Lundy, because Lundy would bind you in this circuit, correct? That's why, to me, you need to distinguish Lundy. Lundy, you distinguish on something about presumption, that what the Fourth Circuit didn't like was the use of a presumption. So I looked at the word presumption. Oh, this is long, but I'm getting to the question. Right, right, I understand. And the presumption is—we use the word presumption, presumed. So I'm saying, where did that come from? I look back. There isn't any presumption, certainly not to use the word presumption or we presume or anything like that. The analysis that I saw in the Lundy decisions looked a lot like the decisions in this case. I mean as far as factual analysis. Right. And then the court—so I said, well, I don't see a presumption. Then that makes me think when this court used presumption, it means the presumption, improper presumption, arises out of your improper conduct. And I don't mean personally, I mean in applying the test. And they make it clear. The board's transposition of the test that you used in Lundy runs afoul of the statute. And it seems to me that's the crux of the decision is the imposition of the overwhelming interest test, not any presumption. Right. But you just disagree with the reading of that case. Well, based on the text of the case, and I appreciate it, it will be for you to decide, but a two-part answer. As you started, the court was concerned with the adoption of what it saw as a novel legal standard. And what was novel was the presumption. They said, where's the usual multi-factor analysis we see? It's not here. We have a presumption. Only after making that presumption did you analyze the factors we discussed. But wasn't there an analysis in the Lundy NLRB record? Only under an overwhelming community of— But then you look at the factors and see it looked a lot like the traditional test to me, the analysis. Right, but what was very different, and I'm not trying to get into semantics here, but what's very different in terms of the history and the precedent is the board would do a full multi-factor analysis under community of interest to assess whether the unit is an appropriate unit. And only if that test was met did a party challenging that unit have to meet a heightened burden. As in this case, the way the regional director did it. As in this case, where the regional director looked at all the facts, found a unit appropriate, and then only after that found that the unit wasn't clearly enough. Maybe the problem here is with the language of specialty health care, which seems to suggest that in applying the community of interest test on the front end, you look solely to the proposed unit. But that's not correct, is it? I mean, you have to look, as Judge Harris indicated the regional director did, to the facility as a whole and decide whether or not there are sufficient differences, distinct differences, that warrant setting aside this proposed unit as a separate unit for purposes of bargaining. And that's what happened here. That's what happened here, and that's what the specialty framework calls for, which is looking at the employer's operations as a whole in both the included and excluded employees. Well, I'm not sure that that's all that clear. It seems to suggest that you look at it in isolation, but that's not correct. I appreciate you using that term because that distinction helps. Clearly, under specialty, the board does not look at the petition for a unit in isolation, and the regional director's decision here is an example of that. The first thing he looks at is are they readily identifiable as a group, based on what? Based on being put on a different team or department, having different skills and educational requirements, different wages. Not just that they share similarities on those criteria, but they're very different from the other employees the employer seeks to include here. Clearly, that's not looking at the employees in isolation. We can quibble over the facts in the application, but it's not looking at employees in isolation. And as this court knows, another traditional factor that was discussed here by the regional director is interaction and interchange. Let me stop and ask you this question. In your brief at page 37, you say this. You're talking about Lundy. The court specifically stated that a union's desire for a certain unit alone is not grounds for certification if a unit is, quote, otherwise inappropriate, quote, id. But that didn't come from Lundy's rationale at all, does it? Well, I think it did, Your Honor. You cite that id, and you quite ñ the court in Lundy didn't say that otherwise inappropriate language. Well, I apologize if we paraphrase, but I do stand behind the view. You didn't paraphrase. You took a direct quote and cited it to the Fourth Circuit, and that's, as best I can find, that is the parenthetical from a Seventh Circuit case. Now, they may have pointed to that case, but they didn't say that. And that word alone, I can't find that in the opinion. Your Honor, I apologize if there was any miscite. Frankly, I don't know off the top of my head. But what I can tell you, and I think this is what matters. Well, just let me say this question. Yes, sir. No, no, no. It's not just a case of a miscite, if I am correct. You use that as a driving force in your analysis about why the Fourth Circuit case doesn't apply because you say that's what we said in that case. And I'm just suggesting to you, I'm not sure. In fact, as I'm pretty clear, that's not what we said in that case. Your Honor, I only meant to apologize if there was some kind of typo in our cite. I do stand behind our interpretation of the decision. And I'm going to say this again. I'm not suggesting that there's a typo. I'm suggesting this is what it looks like to me in your argument. And you see why it concerns me because this is a critical point to me of what we said and what Lundy does and doesn't mean. And in part of your argument on Lundy, it appears to me I'm going to give you the benefit of the doubt. But I've looked at it pretty thoroughly, and I've had others look at it, and we can't find that language that we've said it. Maybe we did, but I can't find it. I understand. But you use that as a centerpiece of your analysis. That's my point. Your Honor, I'm sorry for any confusion, and I don't want to go around and around on the same point. But just to state the board's view of this decision, I believe the court does, at the language we've been discussing, say, we're concerned about the presumption here. In that same paragraph, the view that the board had a presumption of initial appropriateness, the court said, this is what leads to impermissibly giving controlling weight. And even in the context of the accretion test, the problem is, again, the presumption. When you, in accretion, you could say there essentially is a presumption the unit's already appropriate. It's just because there isn't going to be an election to protect the employees who are being added without an election, you apply a heightened burden. Moving that whole thing to the unit determination would be a problem. But the board's not doing it here. Again, they're starting as they have traditionally, as this court has accepted, with the traditional community of interest principles. These are the facts we've noted that the regional director started with, showing the similarities of the employees in the unit and their significant differences with the employees out of the unit. Let me ask this question. I still don't understand this. Why do you need the new test? Why couldn't you just do the traditional analysis and decide the same unit that you would with this test? Your Honor, perhaps the board could have, but I would submit that when you look at what the board did in its cogent explanation, it wasn't unreasonable to clarify it. And the Sixth Circuit explained this in kindred in approving that test. The board acknowledged, we've always applied a heightened standard because it only has to be an appropriate unit. So you have to show more than that your other unit is also appropriate, even more appropriate. But in applying that heightened standard, we've used some slightly varying formulations. We think it would be better to adopt in the board's view the careful work of the D.C. Circuit in Blue Man, Vegas, and clarify that standard. As the board explained, and the Sixth Circuit noted this in kindred, so doing further. Does that shift in any way reduce the function of that appeals court in reviewing what you did in any way? I don't see how, Your Honor, because either way the board makes findings under the community of interest test and the subsequent heightened burden as to why the test was or was not met. And the court can review that. My point is it's reasonable for the board to say, and I think the kindred court in the Sixth Circuit put it best, there's no error in the board clarifying that it'll take one of its precedents and apply that going forward. There's certainly no error in an agency acknowledging we've used from different terms, some different terms for what we viewed and the D.C. Circuit viewed as essentially the same test. To avoid confusion, we're going to pick this term going forward. We think that will do a better job of fulfilling the statute's goal of assuring to employees their freest choice of representative and can also help employees, if they wish to, order their operations with a view towards potential future bargaining. And as we saw here, the employer has control over many of the factors that go into the analysis. Here it shows to put some employees over on this team, other employees on this team, and to have different skills and training requirements for them. So at the end of the day, it's a reasonable decision to adopt this test and to clarify its standard, and the unit determination here is reasonable under the facts, even though, as you noted, it may have also been a reasonable unit determination without the clarification. But there's no reversible error there. The board's view is reasonably defensible. And I just want to point that out because my opponent acts like, contrary to what the Sixth Circuit found and the board's view of its own precedent and specialty, that this is some vastly different test, not a clarification. That's a wild overstatement, or at least the board reasonably viewed its precedent as coalescing to this one heightened burden. Do you think the Fourth Circuit and Lundy thought that it was what you'd always been doing? Under the transposition of the overwhelming community of interest test? Or do you think they used that language in Lundy? I think the court in Lundy felt that the board was doing something new here by skipping right to the heightened burden without the requisite analysis of the unit being appropriate in the first instance under the usual factors, and that that's what was new. That's what the court called the novel standard. It said novel standard, and then it said it's this presumption. And then it said that runs the risk of affording controlling weight impermissibly because you're not actually That whole section ends with the statement that the transposition of the test violates the statute. That's all leading to the court's resolution that the transposition of what you call what you've always been doing, but the court didn't think that's what you'd always been doing. And they said, and they call it the overwhelming community of interest test. Transposition of that to this context violates. I understand. I don't want to confuse it. By what the board has always been doing, because the board did acknowledge some varying terms, is to first look at the appropriate, find out whether it's an appropriate unit under the traditional factors, and then apply a heightened burden to an employer who challenges that unit. Now, in the court's objection to the overwhelming community test, in the board's view, is tied to the presumption. That's what was novel. And that's what the court addressed. The court did not address a case like this, where the board clearly found an appropriate unit based on a careful analysis of the facts and the similarities and differences under community of interest, and only after doing that, apply to an overwhelming community of interest test. Lundy, I think we can agree to not address that. And so I see I'm over time, so unless the court is ready. We thank you very much. Thank you very much. Mr. Ginsburg. Good morning. May it please the court, Matthew Ginsburg, on behalf of the intervener, Operating Engineers Local 501. Since my time is very limited, I'll just address a few questions that the court has raised. First, I just wanted to. You didn't write the D.C. appeals decision, did you? Oh, yes. No, no relative. Okay. Neither that judge nor Justice Ginsburg is a relative that I'm aware of. I was just asking about that. Yes. The specialty health care itself in the board's decision, at page nine, the board describes the community of interest test and has a long block quote from a prior decision in which it lays out the factors of that test in a way that makes totally clear, and I think that explains in part why the regional director did such a thorough job, that that test requires the board and its regional directors to look both at the community of interest within the petition for unit as well as the distinctions between that unit and the employees who are outside the unit. So I won't read the whole block quote, but it says things like whether the employees are organized into a separate department, have distinct skills in training, have distinct job functions, and perform distinct work, so on and so forth. And so the board has made clear, and we quote in our brief, in a latter decision may seek to apply specialty health care, that this is part and parcel of what the regional directors. What do you make of that language, the board's, this is from Lundy, the board's transposition of the overwhelming interest standard runs afoul of 9C-5? So what I make of that language and the totality of that language, including the presumption discussion that the parties have been having, is that what ran afoul of 9C-5 was the combination of a presumption, not doing this community of interest test, which the specialty health care board laid out, and then applying the overwhelming community of interest. And why I say that. And so you think that in the NLRB decision in Lundy that they had basically presumed it as to the unit there? Well, so, Judge, with all due respect, all I can do is read this court's decisions. I know, but I can ask you to explain what your answer is in light of the facts. That's what I'm trying to ask you. And how I interpret it is similar to how I believe Judge Harris interpreted it at the outset of this argument, which is that the union in that case had petitioned for a production and maintenance unit leaving out these quality assurance employees, and that the board said that's okay. Now, they quoted some factors, but they didn't go into much of an analysis of why, despite some shared community of interest, why it was okay to leave that third group out. And this court said what we see is that you're using a presumption, and when you add that presumption with this overwhelming community of tests. I'm asking, do you think that the NLRB in Lundy did not do a normal type analysis on all the factors? Yes, I believe that the board in Lundy did not do its traditional community of interest test as set forth in specialty health care, and that is the key distinction. So whether or not, obviously the board is issuing its decisions against the backdrop of this court's holdings, and so it reads the same language that we're all discussing. And so it made clear, and again, this block quote, I think, is very helpful in making clear that it wants its regional directors to look inside and outside the unit at the first step and considering whether that's an appropriate unit. And then this court has always said, and I think this also helps to make sense of Lundy, that once the board has looked at that unit, it's always going to be a heightened standard the employer is going to have to show to show that other employees have to be included. Because, of course, you could have, we've all, both parties acknowledge that any workplace can have more than one appropriate unit. No, no, no, the point is I understand the tension there and having the factors, but you also have to give some weight to what the union and the employees want to do. You have to do that. There's a tension. It's just I'm trying to understand how we deal with that tension in light of Lundy is what I'm doing. And I understand what you're saying about Lundy. And I would just call it, in addition to the court's attention to its later decisions in the Sandvik Rock tools case and overnight trucking, because in both of those cases, which are post-Lundy packing cases, the employer argues that additional employees should be put into the unit, and this court held no, you know, the board had applied its traditional community of interest standard, held the employer to the utterly inappropriate standard, which this court has repeatedly used. So you haven't shown that the petition for a unit that the board has found appropriate is utterly inappropriate, therefore it's okay. And in overnight in particular, I think you can, Judge Ludwig in that case, goes into some depth about what exactly does Lundy mean. And I think what you can take from that is that, you know, whatever Lundy meant exactly, where it is after several applications of that decision in this court, what it means is that the board has to apply the traditional community of interest test at the first step before considering the employer's arguments and that the employer has to meet this heightened standard. We submit that the way that the board has clarified its heightened standard is entirely consistent with, for example, this court's heightened standard of utterly inappropriate, whether it's overwhelming or utterly inappropriate or so significant, so strong, all terms that have been used by the board and by this court, that that is an appropriate standard. And obviously, as this court, I think, has indicated in the facts of this case, that the board's order should be enforced. I want to give you 15 seconds to wrap up. Sure. Thank you. I took some of the questions, but you made good points for your argument, I think, and we'll give you 15 seconds to wrap up. Okay. Thank you. I will just wrap up by saying I think, you know, here the union petitioned for 113 skilled maintenance employees at this Bakersfield, California, ice cream plant. We think the regional director's decision, which considered all the traditional community of interest factors, is supported by more than substantial evidence, very strong evidence, in that the board's order in this case should be enforced. Thank you very much. Thank you very much. Thank you. Mr. Bob, glad to hear from you again. Thank you, Your Honor. The traditional community of interest test that all of us reference has always included the analysis of those community of interest factors across all of the employees that may share them and not just the focused unit. And I think this court is honing in on the exact question that you have to answer in this case. Does the specialty health care standard drive the only community of interest analysis being done? Does it drive it exclusively into the unit that is being proposed? I think it's incorrect and maybe disingenuous for the board to now say, as they hear that issue develop, to now say, oh, no, specialty health care allows us to look both inside the proposed unit and outside the proposed unit. That's not what they've said in this case. On page 37 of the brief that Your Honor referenced, the board told us, in fact, to avoid the problems in Lundy. In this case and future cases, the board and specialty clearly stated that it must first determine whether the petition for employees constitute an identifiable group. In fairness, that's the board, right, and the person who just told us that represents the union. Am I right about this? No, in the board. No, Mr. Laurel also told you that the community of interest test under specialty health care is now applied by reference to both people inside the petition for a unit and outside. Does this indicate that the board and the union are taking slightly different approaches to this case? And that's perfectly fair, right? They don't necessarily have precisely co-extensive. They may be. I know, right, Your Honor, that's true. They may do that. But in this case, I would like to cite on the record and recommend to the court's attention the most recent board decision on scope of the unit analysis. It's two months old. It's from August of this year. It's DPI Secure Print 362 NLRB number 172. And in it, Member Johnson dissents and provides a very comprehensive, thorough analysis of both the historical application of unit determination standards under the Act and the problems with specialty health care. And he calls out this precise issue, saying that the board is somewhat cagey in its specialty health care standard in moving away from the historical standards because now the community of interest analysis is driven into the unit proposed by the union. That's where the... But that's not what the... Even if you're right that specialty health care may be a cagey opinion, that's not what the regional director did here. You heard Judge Harris summarize his analysis, and it was not insular at all. The regional director tells us, and it's in our appendix on 415, Your Honor, when an issue of bargaining unit appropriateness is raised, the board begins with the petition for unit, and if deemed appropriate, the inquiry ends, rendering irrelevant a party's argument that the unit would be more appropriate if it excluded or included additional employees. And he cites Lundy. But in arriving at the first part of that test, the regional director in this case looked not only at the proposed unit but at those who had been left out and decided that the differences were sufficient, there was a distinct enough difference that it warranted separating the units on that basis. I think what he did is unclear. Each paragraph where he addresses a separate community of interest standard starts by him identifying how the maintenance employees share that unit. In some of those paragraphs he goes on to say, and that looks to me to be different, there's some different wages or a different supervisor, but all sorts of things that in the board's jurisprudence on factory cases, challenging maintenance-only units, have been found to be the insignificant kind of differences that don't preclude production employees from the unit. It just seems like you're arguing a different case, and I totally understand the concerns you're raising. I'm just having so much trouble seeing how they are implicated on the facts of this case. So let me try to ask the question this way, because this is what concerns me about this. At least as I see it, we have in front of us a case where the proposed unit precisely tracks the pre-existing employer-described unit. Department. Yeah. It's a department. Department. There's no fracturing of departments. There's no combining of some but not all departments. So you've got that precise tracking of the pre-existing line, and you do have findings that within that department the employees both share a common interest and have distinctions as between them and sort of looking out the other units. If in a case like that we were to hold that that is not an appropriate bargaining unit, when would it ever be appropriate to certify a bargaining unit that wasn't as large as it could possibly be? Do you know what I'm saying? Wouldn't we be holding that per se you always have to certify the largest unit that shares some commonality of interest? And we've said over and over again that that's not the rule. So I'm worried about how I square your argument on this case with what we keep saying, which is that you don't have to certify the largest unit that shares some community of interest. But to comply with the statute in determining what's the appropriate unit, you have to be sure that you've assessed the excluded person's community of interest with the petition for a unit and do that in the context of a test that is open-minded to accepting and respecting those, not relegating them to a standard that can't be met. It's virtually insurmountable. I'm not going to read you the whole thing because that will just take too long, but I'm looking at it right now. I do feel like we're talking about two different cases. There's no and only one classification. Is there any overlap with production employees' wage rates? Maintenance employees share similar hours. Production employees work a different schedule. I mean, I just- Your Honor, I think the regional director decision reflects the criticism that we've seen of the specialty health care standard, which means it elevates to dispositive relatively small differences of employees, who, as this Court said in Lundy, the quality assurance employees had to be included in the production and maintenance unit because they all perform functions that are integral to production. They all have to perform their function, albeit different, and in a different job classification with a different- There were meager differences between them. That wasn't what it rested on. It said there were only these meager differences and that some of the actual justifications asserted for excluding that one group didn't hold up on the facts. It turned out it just wasn't true, that they didn't all have different supervisors. There's none of that here. And here, where everybody has the exact same benefits, they're subject to all the exact same terms and conditions of employment, they use the exact same facilities, and most important, they work together. The production employees cannot do their jobs, Your Honor. I'm going to give you 10 seconds to wrap up. We'll let you go. We've asked you questions. We're glad to have the answers, but we're going to give you 10 seconds. Thank you very much. The production employees at this facility can't do their job without the maintenance employees. Maintenance employees set up the line that the production employees run. They fix it. They repair it. They break it down for changeovers. These employees all work together. The production employees' terms and conditions will necessarily be affected by what gets bargained for the terms and conditions of the maintenance employees. Thank you very much for your patience with me. Thank you very much. You don't need a break, do you? No. You don't break down? I don't. We'll step down to great counsel and go to the final case for the day.
judges: Dennis W. Shedd, Albert Diaz, Pamela A. Harris